Good morning, your honors. May it please the court. My name is Daniel Crawford. I represent the appellant in this matter, Florentina Demuth. We're here today because the district court held that despite the fact Deputy Lee had violated Ms. Demuth's rights, Fourth Amendment rights, when he handcuffed her and dragged her from the public defender's office into the courtroom. Could I stop you there? Dragged her? Physically moved her. Escorted her down the hallway, is that fair to say? I want to make sure I've got the facts right. My understanding is he had his hand on his arm and they escorted her in, is that right? Or did I miss it? I'm not sure about the findings of the district court, but that's factually what happened. The district court found that she didn't resist once he put the handcuffs on. Didn't resist, physically led. Okay. So she wasn't dragged. Okay, go on. When you're moved by police, I apologize for the rhetoric. Nevertheless, he was protected by the doctrine of qualified immunity. The doctrine, of course, is set forth in Saussure versus Katz. There's no question in this case about the first part of the test, which is that Ms. Demuth's Fourth Amendment rights were violated. Respondents have conceded as much. The question in this case is over the second part of the test, whether a reasonable law enforcement officer in Deputy Lee's position would have understood that his conduct was unlawful given the situation that he confronted. Now, under the doctrine of qualified immunity, a law enforcement officer is entitled to the benefit of reasonable mistakes of fact and reasonable mistakes of law. In this case, Deputy Lee made a reasonable mistake of fact and we conceded. And that was when he heard reference. Let me break this down just a little bit. You showed an arrest, right? I'm sorry? You showed that she was handcuffed, right? She was, yes, the district court found that. Who has the burden of showing whether he was authorized? Well, to the extent that it is a... Is it disputed whether he was authorized or not? Is it conceded that he was not authorized to handcuff her? He was, he, it's disputed. It's disputed whether he was authorized to handcuff her or not because the, there was no... Okay, who has the burden to show either authority or lack of authority? Qualified immunity is an affirmative defense. The burden would be on the defendants, or in this case the Respondents, to establish qualified immunity. No, we're not yet at qualified immunity. We are still at the question of constitutional violation. Oh, to establish constitutional violation would have been, well, it's the first part of the... Okay, listen to my question again, and let me say, ask it one more time. Who had the burden of showing authority to, for want of a better word, I'll say arrest, you know, the handcuffing. Who had authority to show whether the officer did or did not have authority to do that? The Respondents, Your Honor, because that was part of the, the qualified immunity defense that they were asserting, the affirmative defense that they were asserting. So the Respondents had the burden to show that Deputy Lee was authorized to act as he did. You had the burden to demonstrate that he was operating under a color of state law, did you not? Yes, we did. The 1983 action. Okay, and it's really the same question in a different form, I think, that Judge Kaczynski is asking. How did you establish that he was operating under color of state law? The district court made that finding, and because he was acting as a bailiff, he was conducting his duties as a bailiff, and he was purportedly following his judge's orders. He was in the course and scope of his duties. Let me go back to what your client did in this case. Your client, over a period of time, refused to respond to various communications that asked her to return to the courtroom, correct? Yes, Your Honor. She heard at least one. That was... Okay, yes is the answer. The judge then says to the bailiff, go upstairs and see if you can get her, if not, bring back the supervisor, correct? When she gets there, your client says, if you want to take me back, you'll have to put me in handcuffs. At the time she was speaking directly to her supervisor, she said, I'll be there in just a minute. The handcuffs comment came at the end of the exchange between her and Deputy Lee. The deputy said something like, the judge wants you there right away, and she said, if you want to take me back, you'll have to put me in handcuffs, correct? Ultimately, yes. And then he took her back in handcuffs. Yes. When he got to the courtroom, he said, can I take the handcuffs off? And your client said, no, no, leave them on. That's also factually correct. Okay. So let's talk about periods of time your client can complain. She surely can't complain about anything after she reached the courtroom, can she? I disagree. I believe that the length of time that you're going to remain in custody is not up to you as the detainee. It's up to the law enforcement officer. Well, except I want to take the handcuffs off, or would you like the handcuffs off? And your client said, no, I'd like to keep them on. Again, I'm sorry. Right. Isn't that what the record shows? That is what the record shows. Okay. So how is it that your client can complain about having the handcuffs on once she reached the courtroom? Because again, I think that it was up to the law enforcement officer, how long he's going to detain her. Once she, again, the law enforcement officers did say to her, I will take the handcuffs off. And she said, no. Was he supposed to forcibly take them off her at that point? I believe the record is not that he said, I'm going to take them off. He said, shall I take them off? And she ultimately said, don't ask me. He's the sheriff. It's up to him. It's not once you're arrested, once you're detained, you lose the liberty to end the confrontation. Was she detained in the courtroom where she was supposed to be before the judge? Was she illegally detained at a place where a judge had asked her to be at that time? Well, I believe if you're standing in handcuffs and you're not free to leave, you're legally detained. Are you detained right now? No, I'm free to leave. I choose not to. I don't think you are free to leave. I think if you test that, I wasn't intending to. Let's test it. If you decide to leave right now, could I order your arrest? I don't think so. I don't think so. Could we ask the marshal to bring you back? We could ask the marshal anything. The question is, if we ask the marshal to bring you back, would he be justified in treating this as an order like an arrest warrant? Your honor, if you ask the marshal to bring me back, then he would be protected under quasi-judicial immunity because he would be following a court order. He would be following a clear and direct court order. That's not what happened. You're giving away way too much. Is the fact that I say something making an order? If I haven't reduced it to writing? If I haven't entered it in the dark of the court? What if I'm standing in the corridor and I see somebody, I say, hey, arrest that guy over there. Am I giving an order that has the force of law that then turns the marshal into a judicial officer? Your honor, factually, no. But when we're talking about qualified immunity, the question would be whether the officer reasonably mistook that to be an order by the court. And I think in this case, that's certainly right. But you want to skip ahead to it's very hard to tell what's reasonable, not reasonable for the officer to know or understand. So skipping ahead to qualified immunity without knowing whether the underlying thing is an order, whether it has the force of law really does your client a disservice. Factually, there was no order to Deputy Lee. That's in the court's record. Nobody's disputed that. There's a sequence of events. And at one point, the, I'll say, judge, the judicial officer said, I order her to return to the courtroom. Yes. All right. So was Deputy Lee still in the courtroom at the time the judge said that? Yes. And that's what he heard. That was not an order to him. He mistakenly understood that to be an order. The order to him was go upstairs and get her supervisor. There was no order to him. Well, the judge did, as I understand it, he was told, and maybe I'm wrong about the record, but I've read it. As I understand it, the judge said, go upstairs and either bring back, either, if she won't come back, bring back the supervisor, correct? That was finding of fact 53. That's what Deputy Lee understood the judge to have said. And again, we can see that that's a reasonable. And that's a reasonable understanding of what the judge said. Yes. You can see that that was a reasonable understanding of what the judge said? That the judge said. So it was a direction, wasn't it? He reasonably understood he was given that direction. Are we missing words here over whether or not the judge said order? No. He understood that he was ordered to either get Ms. DeMuth or, if she refused, then bring her supervisor to explain what was happening. The supervisor was standing right in front of her? Yes. I'm sorry? So the answer to Judge Hurwitz's question would have been yes. I apologize if I didn't. No, that's okay. But I think we cleared it up. But let me then, so if he understood that. I'm confused. Yeah. If he understood that and then he went upstairs and your client said, if you want to bring me back, you got to put me in handcuffs. How did he, wouldn't he reasonably understand at that point that that was the way he was to bring her back? He wasn't following her direction. He was following the order of the court, which, which was clear what to do if she refused to come. If she refuses, then bring Ms. DeLaGarra-Jones, who was directly. Well, but she didn't refuse. She said, I'll come in a minute, but if you want to bring me, you got to put me in handcuffs. He didn't refuse. Then what reasonably objective law enforcement officer would think that he could put her in handcuffs if she hadn't refused? How about a reasonably law enforcement officer to whom a person had said, please put me in handcuffs if you want to bring me back? What if he's, what if she'd said, please shoot me? The law enforcement officer, that would not be reasonable. The extent that, that, that a law enforcement officer can act under color of law and do things like put people in constitutional custody, put them in handcuffs is not up to the person on the street. It's up to the law enforcement officer to determine the extent of their authority. Counselor, your time is almost out. I just have one question. Is there any dispute that there were 52 cases on the docket that morning? No, there weren't. Fairly typical day for a courtroom like that. It's a heavy workload if you're the judge on the bench. Yes, it is. May I ask one more question? And this is probably not, I want to know if there's anything in the record on this. Did your client have any excuse for not being back in the courtroom when being ordered to? Oh, absolutely. It's all over the record, Your Honor. She was completing an assignment for Ms. Dayla Garrett-Jones, her supervisor, who had said, complete this before you go, because once you go back to the courtroom, you're probably going to get sent out of this courthouse. That's in the record. What your client was doing was choosing to abide by a direction given by her immediate supervisor in the public defender's office, as opposed to a direction from the court to be in court on time to handle the 52 cases that needed to be handled. Is that your position, really? What's in the record, Your Honor, is that nobody ever communicated to Mr. Muth that the court had made an order. Deputy Lee never said the court has ordered you to come back. He said, you have to come back now. That was a normal interaction. He did not say, the court has ordered you to come back. He never said that to her. Nobody. It was not – again, Ms. – Referee Shirley's order was not recorded. It was not communicated in any way ever to Mr. Muth. That's factual in the record. Well, but that – part of that was because she refused to answer calls and texts during that time period, right? But she concedes that – She didn't receive a text, actually. She got – emails, I'm sorry. She did not receive any on this day. How many calls did she get? There was a – she heard at least one page. That's all the – And the telephone was ringing. The records heard that she heard the call as well. Heard the telephone ringing in her office. Again, a normal procedure. Okay. Thank you. We'll hear from – Thank you. Good morning, Your Honor. Stephen Rennick for the defendant, county, and Deputy Lee. I'll be honest. I'm not sure what to say. I had a different sort of argument planned. Why don't you start by telling me where the referee is? I'm sorry? Why don't you start by telling me where the referee is? Is that the judge? Is it a judicial officer? Do referees have contempt powers? Can they arrest people? Can they issue bench warrants? To be honest, Your Honor, I don't know the scope of a referee's power. I believe they're full judicial officers, but I'm honestly not sure. You don't know. Can a referee adjudicate juvenile matters? Yes. Can summonses be issued to make people show up at proceedings? I don't know. My belief – and I apologize because I don't know the full scope – I believe referee is more a designation of judicial officers that handle – You don't know whether they have contempt powers, whether they can issue arrest warrants or anything like that? I don't have specific information. Do you know of whether or not an order that's not entered on the docket has the force of law? California? I believe it does, Your Honor. Well, you're wrong. Simmons v. Superior Court, 52 counts, seconds, 373, says not. You have to go through the right procedures. It does seem to be a problem. The other part of the problem is I think it is uncontested that even if they'd turned on the recording, even if it had been on record, which I think it was not quite clearly, it wasn't communicated to Ms. DeMuth, was it? No. Not that specific order. And there was certainly no order to arrest her. No. You can see that what the judge did was – well, at least what the officer understood that the judge did was to say, go get her, and if you can't get her, get her supervisor. That's what the officer understood. Okay. And that's not what he did. That's not what he did. He took it on himself to put her in handcuffs. He did that as the court was discussing just previously. I'm sorry. Is there a yes? Yes. He took it on himself. It's a fact. You can just surely say that he put her in handcuffs. Yes. No, but he did it on his own. He was not ordered by anybody to do it. To specifically put her in handcuffs? No. He was not generally ordered. I mean, what does specifically mean? Was he generally said some sort of restraint? You know, you don't have to use handcuffs. You could use a rope. No, he's not. You might grab her. Was there anything like that? No. There were no – there was no – So he did it on his own. This was his own initiative. He decided instead of choosing an alternative that the judge had given him, if Ms. Demuse decided not to come, which is to bring the supervisor, he decided to ad lib and put handcuffs on her. No, because that presumes that Deputy Lee believed she was refusing. The district judge found otherwise, and it is a – I'm sorry. So you think that his directions were, if she refuses, you bring the supervisors, but if she doesn't refuse, you put handcuffs on her. That's what he reasonably was going on. Again, there was nothing about handcuffs, but it was to bring her to the court. So where does he get the authority to put handcuffs on her? I mean, if it's not the judge, she's not suspected of a crime, right? It seems to me your position is the authority came from Ms. Demuse, that she said, I will come with you, essentially. I will come with you if you put handcuffs on me. Is that your position? Well, that's where it started. That's what the district judge seems to think. Well, but there's more to it than that, because there was a concession at – But you concede that that wouldn't do it, right? The fact that she says put handcuffs on me would be no more effective than if she said, I'll come if you point a gun at me. You'd have to point a gun at me to get me to come right now. That would not authorize him to pull a gun and point it at her, would it? I'm honestly not sure, since this is a situation that, as far as anything – Well, ad lib. Give me your best guess on behalf of your client. If your answer is, I don't know, that's fine. I'll have to come up with my own answer. But if you would like to say something – Say what the district court found. Maybe that'll be helpful to us. It's not simply what the district court found. Well, that would be helpful to us, because that's what we're trying to figure out, is supported or not. So what did the district court find? The district court didn't, as far as I recall, make any specific findings regarding whether in the abstract, the use of handcuffs or some sort of – Well, the district court actually found that there was no quasi-judicial immunity. So the district court found that Mr. Lee was not ordered to do this. He didn't have authority to do it. The question is whether he believed he had authority. So I think the answer to all the questions so far is, of course, he had no authority to put her in handcuffs. Well, the problem I'm having is the separation of the handcuffs from the detention. And what he didn't have authority for, what the district court found he didn't have authority for, was to go and bring her back to the courtroom. Okay. So we all agree. He didn't have authority to do that. It follows that he didn't have authority to do that by use of handcuffs, correct? You mean – okay, it's part and parcel of that. Obviously, he didn't have any authority to bring her at all. He didn't have some, you know – And you lost on that issue below. And you're not – your appeals don't – your brief doesn't cross – does not cross appeal, but cross suggests that the judge was wrong. No, and – He had that authority when, in fact, he did not. Well, part of the problem I'm having is that – You have a weak case. That's your big problem. But why don't you answer the question? Did you hear Judge Harris's question? That's what the district judge found. So tell us why you think the judge was reasonable in a factual finding that Deputy Lee reasonably believed he could do what he did. Because the plaintiff conceded it. Conceded what? The plaintiff conceded that if Deputy Lee – I'm sorry. Conceded where? In court? Yes. In the district court. It's on – I believe it's page – I'm sorry. Conceded what? Conceded what? He conceded that if Deputy Lee had the authority to bring the plaintiff to the courtroom, he did not use excessive force. That's a different question. Listen to the question I asked you. The judge found that Deputy Lee did not have the authority to bring her to the courtroom. That's what the district judge found. So he didn't have the authority. The question is whether he reasonably believed he had the authority. And that's – tell me why, because if he didn't reasonably believe he had the authority, let me venture a guess. You lose. So tell me why you think he reasonably believed he had the authority and was entitled to qualified – not quasi-judicial, but qualified official immunity. Because he believed he had the authority, mistakenly, to bring her. He, as part of that, he believed he had the authority to use reasonable quantum of force. Okay, why was that a reasonable assumption on Deputy Lee's part? The district court found that it was. Tell me – we have to look at the record to determine whether the district court's finding is supported. Tell me what supports that finding by the district court. Well, one, the plaintiff conceded it. No, the plaintiff did not concede it. The plaintiff conceded was if he had authority to bring her back, then bringing her back physically was okay. But the judge found that he didn't have authority to bring her back. So to think – the plaintiff can't – I want to know what facts support Deputy Lee's Well, but that goes – The plaintiff's concession couldn't have supported his belief. It does support it for the qualified immunity issue, which is where it becomes relevant. No, no, I'm asking a different question. Surely at the time that Deputy Lee brought your client back to the courtroom, he didn't have the plaintiff's concession in his mind. That occurred many months later in court. Tell me what Deputy Lee knew that led him to reasonably believe he could do what he did. He believed it was necessary to – Now, tell me what he knew. Tell me what facts he knew that reasonably led him to the belief that he could do what he did. He believed he had been ordered to bring Ms. DeMuth back to the courtroom. He believed that the – Mistakenly. Yes. What he knew, the facts that he knew was that the judge said, go get the supervisor or her. That's one fact, okay? Well, it was if she refused to bring the supervisor, if she didn't refuse to bring her. Okay, so that's fact one. He walks upstairs. Tell me what facts he then learns that lead him to reasonably believe he can put this woman in handcuffs. That Ms. DeMuth said, the only way I'm going back with you is if you arrest me. Well, and to be fair, the trial court also found that he believed the situation was urgent and that there were 52 cases on the calendar and that that was what sort of brought this to a head, it seems to me. Yes, and he sat through the calendar that morning knowing that these were last day cases that had to be handled that day. Correct. Including her case, the case she was assigned to had to be handled that day. By the way, these are not trick questions. I'm just trying to find out what's in the record that we have to determine. The judge made a finding here that he reasonably believed this and is entitled to qualified immunity. We have to determine what facts support – if it's reasonable, we're as good as the district judge in figuring that out. We're trying to figure out what facts. I mean, you've read the record. You tell us what facts. Judge Quiston gave you one. There's the urgency. There was the statement by – I'm sorry, let's focus on those facts. Why does the fact that he thinks this is urgent make it reasonable for him to think that he can handcuff her? What is the relationship between those two things? I mean, he might then say, look, this is urgent. I really want you to come. This is urgent. I mean, that he could communicate. But where's the nexus between that and thinking he can put her in handcuffs? Could he have grabbed another deputy and said, hey, let's bodily lift her off because this is urgent? This goes to the degree of force that's used. And what I'm talking about is his reasonable misunderstanding, if there was one, just to tease out the district court's order, that he reasonably but mistakenly understood he was to go get her and bring her back. The degree of force, whether the handcuffs were necessary, is a completely different question. Well, see, I disagree with that. And I think because – Well, in that case, these facts that I just offered don't help you. Yeah, I didn't think they did. Well, I – Isn't the question whether or not he reasonably but misunderstood the order? Misunderstood that he had the authority to go get her, setting aside the degree of force? Or what is your position? Now, you really have confused me about your – Well, no, I'm – the problem I'm having, and I apologize if I'm not making it clear, is that let's assume that he had the right to bring her back to the courtroom. The plaintiff said that the amount of force used, if that were the case, was not excessive. And so when we start talking about whether or not it's appropriate for him to use handcuffs, there has to be an assertion that it's – No, look, it's not the handcuffs we're asking about. I think she volunteered for the handcuffs. Okay. I think she said, please put them on me. The question is whether or not whatever constitutional violation that may have occurred when he took her forcibly with gentle force from the public defender's office to the courtroom was something he reasonably understood he was authorized to do. Well – And so tell – that's the problem. Well, I guess – That's the problem here. And I apologize for not understanding. The answer to that is Ms. DeMuth had made it clear that that was the only circumstances under which she would return to the courtroom at that time. Okay. But why did he reasonably understand that he was authorized to bring her back? So what? That's right. I mean, so what? If you're asking that in the context of why did he bring her back at all – Right. I mean, the question is – look, there are two things the judge might have said. One of them is tell her to come. The other one is bring her. Correct. The district judge said she didn't say bring her. And you haven't disputed that. Correct. Why is it reasonable for him to have understood that what the order was is bring her? Well – By hook or by crook. Some, you know, bring her. Well, I have to say in passing that that issue – No, no. Why don't you just answer – why don't you just answer the question instead of going – Why – why was it – the question is why was it reasonable for him to understand the bring her back, not simply go and stand in front of her? I think the totality of the – No, not simply communicate to her. Say, look, the judge wants her in court. He doesn't even say that, the judge wants. He just says come back. But that's one thing. You could say, look, come back, and then the judge has an alternative. If she won't come, bring the supervisor. Or tell the supervisor to come, right? So he's actually given an alternative. Why is it reasonable for him to then say what I think the judge wants me to do is to bring her? You know, by handcuffs, by pointing a gun at her, by grabbing her, by coercing her, you know, whatever. But why is it reasonable for him to think that when the judge says, here, either she comes or you bring the supervisor, it's okay for him to say, if she doesn't come, I will seize her? Why is that reasonable? What is it in the record that supports that to be a reasonable action on his part? He heard the referee explicitly order, whether it was a formal legal order or not, he heard her say the words, I order Mr. Mooth into, you know, to come to the courtroom. He, that it would be reasonable for a bailiff. But she also said, and if she won't come, bring the supervisor. So it allows for the possibility that she would not come. Correct. So why don't you focus on what happened? It would be helpful for us if we focused on the record. When he gets up there, he has a conversation with Mr. Mooth, does he not? Yes, he does. What is that conversation? The conversation is, he says, you need to come back to courtroom, to the courtroom. She says, words to the effect, I'll, you know, I'll be there in a minute or I'm doing something else. Okay, and then he says what? He repeats, you need to come to the courtroom. And then she says what? I'm not sure how much back and forth there is before she eventually says, the only way I'm coming back now is if you arrest me. Well, if you put me in handcuffs. If you put me in handcuffs. I don't believe that's... That's what the record shows. That's what the record says, counsel. Okay, I apologize. I don't recall it that way, but... Well, it seems to me that the question for us is whether or not those facts, together with whatever the judge said, were enough to give rise to a reasonable belief on the deputy's part that he could bring her back. Right? Yes. Are there any other facts that we're missing here, other than the one that Judge Christin pointed out before, that the deputy thought it was urgent, because he'd seen that this was a busy calendar, and this was the last day for this case? Well, it's beyond that, because the deputy didn't just wander off to find her. He specifically asked the referee, should I go find her? That meant, you know, for him to do that, that meant he was leaving his post. He was leaving the courtroom without security. He felt an urgency to get back to the courtroom. It's not just that, but the judge told him to go. I think it's reasonable for him... No, I'm not asking what it's reasonable. I'm asking what facts would lead him to think it was... Well, that's the facts, that the fact that the referee told him to go. She didn't say go and find her and ask her what's going on. He said, go and find her. Yeah, forget her, and if she doesn't come, bring the supervisor. Perfectly clear. If she refuses to come. And this does come down to a fundamental... I see, so you think if she had said, I refuse, it would be different than if she said, you have to take me in handcuffs. I think it... You think that you'd have to take me in handcuffs is what, a yes, I'm coming? It's a yes that there is a circumstance under which I will come, and... Well, I just want to interrupt you, because I think Judge Hurwitz and I both had this a little bit wrong. On page 23, well, and sort of right, what the court found is she said, if you want me to come right now, you'll have to arrest me, close quote, or words to that effect. And then he said, if I have to, definitely respond, if I have to. And then DeMuth asked, are you going to handcuff me? So she actually said both things. She actually said both things. But getting back to the point that we're... Because you're just answering this exact question. What about this gives rise to this reasonable understanding on his part? Deputy Lee was aware of the necessity for getting something resolved regarding this ongoing case. As Your Honor pointed out, heavy caseload. The judge had made a point of saying she wanted Ms. DeMuth in the courtroom. She specifically sent him out to find her. Was there supposed to be Lee in the courtroom when the judge said, I order her to come? Yes. OK, but Ms. DeMuth wasn't. No. So is that part of your analysis, that the deputy heard the judge say, I order her, whether he understood the legal significance of that or not? Yes. It's not an order on the record. So she can't be charged with constructive knowledge. I mean, if it's an order on the record, then you say, well, whether she actually knew or not, she's charged with knowing it. Of course. But you're asking, what are the factual circumstances that would have ultimately led Deputy Lee to believe that when Ms. DeMuth said. I think the word is reasonably believe. Well, we know he must have believed something because he did it. And I assume Deputy Lee, without knowing, I assume Deputy Lee, since you don't know what a referee is, Deputy Lee at least thought you probably thought she was a judge. Yeah, but I mean. Since a lawyer representing the county doesn't know whether she's a judge or not, my guess is we can't blame Deputy Lee for not knowing. These folks were deposed and I've read the excerpts that we have. But is there any place in the depositions of the people who were there in the office when he was having this exchange with her, which I think would have included her supervisor? Did anybody remember that Deputy Lee said to her that the judge had required her to come back to the courtroom now? I honestly don't recall. I apologize. I it doesn't spring to mind, but that doesn't mean it's not. He did testify that he said something like you need to come back right now. And now the judge found that as a matter of fact, he didn't find it as a matter of fact. And but but the confusing thing to me is that the judge also found that DeMuth was confused about why she was and she thought it might she might have been under arrest for a completely different reason. Correct, that is one of the findings. So the inference is that no one in that exchange in the office made clear to her that she'd in order to go back to the courtroom. Correct. That's what he's going to say when he comes. And my response. Talk about apologies. Has Officer Lee ever apologized to Ms. DeMuth? I have no knowledge. I would just make the comment that there is in the record that I believe it's in the record that Deputy Lee and Ms. DeMuth had worked together for a long time and had a friendly relationship. They called each other by first names. So I would imagine that this was an awkward situation for them that, assuming they continued to work together, somehow got resolved. But I don't know of any apology. I don't know of any apology, no. OK, thank you. Thank you. You are out of time. Would you like to take a minute for a bottle or are you going to let it rest? Only one small point, Your Honor, which is this business about the concession. And I think the Court's comments made clear you understand. But the concession was that I had made to the District Court related to the excessive force claim only. And that was if Deputy Lee had been authorized to act, then it was probably reasonable to do what he had done. It was only to the excessive force claim. And it was if it was a hypothetical that didn't exist. As the Court noted, he was not authorized to act. So the concession is that if his misunderstanding was reasonable, the amount of force he used was OK? If he was authorized to act. Well, no, no, no. That's a separate question. That was not the question she asked you. Can I get a yes or no to that? Am I understanding it? I'm sorry. Can you ask one more time? Sure. If he reasonably understood that he was entitled to bring her back, did he use excessive force? I see. My understanding is that your answer to that question is yes. The amount of force was OK if he reasonably understood what he understood about what he was saying. I thought my answer was no. It was not excessive. If he was reasonably… Not excessive. That's a double negative. You're there. I understand. Go ahead. We're on the same page. I think there's one more question. Did you have one more? The only other thing was counsel's comment that Deputy Lee understood something had to happen. Well, yes, something had to happen. And Referee Shirley had made clear what had to happen, that if Ms. DeMuth refused to come in, bring the supervisor and tell me what's going on. Referee Shirley understood that Ms. DeMuth was not one to not come to court unless there was a good reason. Referee Shirley, these people all work together all the time, understood that something must be going on. That's why she set up that exact condition. If Ms. DeMuth refuses, have her supervisor, who was standing right next to her, come in and tell me what's going on. How do we review the district judge's finding that Deputy Lee reasonably understood that he was authorized to do what he did? That's actually a holding of law, Your Honor. That's the ACT UP Portland v. Bagley case. The reasonableness question is an issue of law that should be reviewed de novo. It's an objective determination, not a subjective one? It's objectively reasonable, yes. That's the standard. What would an objectively reasonable... Deputy in Deputy Lee's position understand? Okay. Thank you. Thank you, Your Honor.
judges: Kozinski, Christen, Hurwitz